Appellee=s Motion for Rehearing Overruled, Opinion of April 11, 2002,
Withdrawn, Reversed in Part and Remanded, and Opinion on









Appellee=s
Motion for Rehearing Overruled, Opinion of April 11, 2002, Withdrawn, Reversed
in Part and Remanded, and Opinion on Rehearing filed July 25, 2002.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-00244-CV

____________

 

CHERYLE R. JOHNSTON, RECEIVER, Appellant

 

V.

 

JUDY SWATE CROOK, Appellee

 



 

On Appeal from the 309th District Court

Harris County, Texas

Trial Court Cause No. 88-11010

 



 

O P I N I O N   O
N   R E H E A R I N G 

We overrule appellee’s motion for rehearing, withdraw our
opinion filed April 11, 2002, and substitute this opinion in its place.








Appellant Cheryle R. Johnston, the receiver (Receiver)
appointed to collect a divorce judgment in favor of Dian Frances Hartwell,
challenges (1) a take-nothing summary judgment in favor of appellee, Judy Swate
Crook; and (2) denial of Receiver’s motion for partial summary judgment.[1]  We reverse and remand.




PROCEDURAL BACKGROUND

Six years ago, the supreme court observed, “This case has a
convoluted procedural history.”  Ex
parte Swate, 922 S.W.2d 122, 123 (Tex. 1996).  Now, we have before us an additional twist.[2]

The lawsuit began July 9, 1996, when Hartwell sued Crook
under the Uniform Fraudulent Transfer Act to recover a house, a diamond ring,
and $105,000.[3]  Hartwell alleged Tommy E. Swate, husband
first of Hartwell, then of Crook, transferred the property to Crook to prevent
Hartwell from collecting a post-divorce final judgment she had obtained against
Swate.  Hartwell pleaded she could not
have discovered with due diligence “[c]ertain transfers” by Swate within the
four-year statute of limitations.

On October 7, 1998, in an effort to collect Hartwell’s
post-divorce judgment, Receiver intervened in Hartwell’s fraudulent transfer
suit.  Receiver alleged the court had “jurisdiction
over [Receiver’s] claims in that they arise from the same facts and
circumstances as set out in Plaintiff=s Petition to Set Aside Conveyances
on file in this action.”








In January 2000, Receiver filed a second amended petition to
set aside the conveyances, listing only herself (and not Hartwell) as a
party.  Receiver’s allegations against
Crook are identical to those in Hartwell’s 1996 petition.  Receiver also pleaded “[c]ertain transfers
[by Swate] could not be discovered with due diligence within the four year
statute of limitations,” and further alleged, “these causes of action have been
brought within one year from the date of discovery.”  In her amended answer, Crook asserted a
general denial and the affirmative defenses of waiver, estoppel, limitations,
laches, and res judicata.  Crook
also alleged the cause of action constituted an impermissible collateral attack
on Crook=s divorce judgment.

Both parties filed traditional motions for summary
judgment.  Receiver sought judgment
against Crook arguing the trial court, in earlier contempt proceedings, already
had determined the facts necessary to her fraudulent transfer cause of
action.  The trial court denied the
motion.

Crook then moved for summary judgment, alleging Receiver=s claims were barred by estoppel, res
judicata, the doctrine of collateral attack on existing judgments, and
limitations. She alleged the house was transferred on April 2, 1990; the ring,
by February 7, 1992; and the cash, by July, 1993.  She did not address the issue of the
discovery rule, raised by Receiver in her pleadings, in relation to any of the
alleged transfers.  Receiver responded,
alleging the motion, filed three days before the case was set for trial, was
not timely filed and contained numerous factual inaccuracies.  The trial court granted Crook’s motion
without stating the grounds.[4]

DISCUSSION

Issues Presented and Standard of Review

In point of error one, Receiver argues the trial court erred
in granting Crook’s motion for summary judgment.  In point of error two, Receiver argues the
trial court erred in denying her motion for partial summary judgment.








When, as in this case, the parties have filed competing
motions for summary judgment, and the trial court grants one motion and denies
the other, we may consider the propriety of the denial as well as the
grant.  Gramercy Ins. Co. v. MRD Inv.,
Inc., 47 S.W.3d 721, 724 (Tex. App.CHouston [14th Dist] 2001, pet.
denied) (citing Com’rs Court v. Agan, 940 S.W.2d 77, 81 (Tex.
1997)).  If the issue raised is based on
undisputed and unambiguous facts, we may determine the question presented as a
matter of law.  Gramercy Ins. Co.,
47 S.W.3d at 724.  We may then either
affirm the judgment or reverse and render the judgment the trial court should
have rendered, including one that denies both motions.  Id. (citing Jones v. Strauss,
745 S.W.2d 898, 900 (Tex. 1988)). 
However, if resolution of the issues rests on disputed facts, summary
judgment is inappropriate, and we should reverse and remand for further
proceedings.  Gramercy Ins. Co.,
47 S.W.3d at 724 (citing Coker v. Coker, 650 S.W.2d 391, 394B95 (Tex.1983)).

The movant for summary judgment has the burden to show there
is no genuine issue of material fact and it is entitled to judgment as a matter
of law.  Nixon v. Mr. Property Mgmt.
Co., 690 S.W.2d 546, 548 (Tex. 1985). 
When deciding whether there is a disputed material fact issue precluding
summary judgment, the appellate court must take as true all evidence favorable
to the non‑movant.  Id. 548B49. 
The reviewing court must indulge every reasonable inference in favor of the
non‑movant and resolve any doubts in its favor.  Id. at 549.

A plaintiff moving for summary judgment must conclusively
prove all essential elements of its claim. 
See MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986); Geiselman
v. Cramer Fin. Group, Inc., 965 S.W.2d 532, 535 (Tex. App.CHouston [14th Dist.] 1997, no
writ).  A defendant moving for
traditional summary judgment assumes the burden of showing as a matter of law
the plaintiff has no cause of action against it.  Levesque v. Wilkens, 57 S.W.3d 499,
503 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  Traditional summary judgment for
a defendant is proper only when the defendant negates at least one element of
each of the plaintiff=s theories of recovery, or pleads and conclusively
establishes each element of an affirmative defense.  Science Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997).  When
the trial court does not specify the ground on which it granted summary
judgment, we must affirm the judgment if any of the movant=s theories with respect to the claim
are meritorious.  Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989).

I.

Point of error one: Did the trial court err in granting

Crook=s motion for summary judgment?

 

A.

Claim preclusion/issue preclusion. 

In her motion for summary judgment, Crook asserted estoppel, res
judicata, and the doctrine of collateral attack on existing judgments.  Crook alleged “Plaintiffs” had filed an
identical suit in the 312th District Court, and the court dismissed Atheir@ intervention with prejudice.  In support, Crook attached (1) an order
dismissing Hartwell=s plea in intervention in the Crook-Swate divorce in the
312th District Court and (2) a copy of a subsequent plea in intervention in the
same court by the former receiver, John Eikenburg.  Crook did not provide a copy of Hartwell’s
plea or an order disposing of Eikenburg’s plea.

In response, Receiver alleged the 312th District Court had
never dismissed the former receiver’s (Eikenburg’s) plea in intervention.  In support, Receiver attached her affidavit
stating, “John Eikenburg, in his capacity as Receiver, filed the Plea in
Intervention which is attached to [Crook’s] motion for Summary Judgment as
Exhibit F.  That Plea in Intervention has
never been dismissed.”[5]  Receiver also stated she had personal
knowledge of the facts in her affidavit, and had worked on the collection of
the judgment against Swate since 1993, first at Eikenburg’s request, then as
Receiver.

Receiver=s controverting affidavit created a fact question on Crook’s
claims of estoppel, res judicata, and the doctrine of collateral
attack.  Summary judgment on these
theories would have been error in light of this genuine issue of material
fact.  See Tex. R. Civ. P. 166a(c).

In addition, although the trial court dismissed Hartwell’s
plea “with prejudice,” we do not equate such a dismissal with dismissal of a Aclaim@ or “cause of action,” sufficient to
support the defense of res judicata or collateral estoppel.  Cf. Mossler v. Shields, 818 S.W.2d
752, 754 (Tex. 1991) (per curiam) (holding claimant estopped from litigating
same claim that had been dismissed with prejudice for discovery abuse).  We look not only at the use of “with
prejudice” in the order, but also at the status of the record.  See Wilde v. Murchie, 949
S.W.2d 331, 332 (Tex. 1997) (per curiam) (stating ambiguous decree must be
interpreted by “reviewing both the decree as a whole and the record” to carry
out the property disposition correctly).

Both Hartwell and Eikenburg intervened in the action in the
312th District Court after that court had rendered judgment.  As such, their interventions were
untimely.  See Beach v. Beach, 912
S.W.2d 345, 348 (Tex. App.CHouston [14th Dist.] 1995, no writ) (stating once final
judgment is rendered in case, intervention cannot be filed unless judgment is
set aside); see also First Alief Bank v. White, 682 S.W.2d 251, 252
(Tex. 1984) (stating plea in intervention is too late if filed after judgment
and may not be considered unless and until judgment has been set aside).  Moreover, an intervenor is a party for
purposes of appeal only if (1) she timely files a pleading, and (2) the trial
court does not strike the pleading before the entry of final judgment.  Preston v. American Eagle Ins. Co., 948
S.W.2d 18, 20 (Tex. App.CDallas 1997, no writ). 
Thus, Hartwell and Eikenburg, who filed untimely pleas in intervention
after judgment, were never parties and could not have appealed the judgment or
dismissal of their pleas.  See id.

In short, when, as here, the court dismisses a post-judgment
plea in intervention, that dismissal (in contrast to dismissal of a claim of a
party) does not constitute a final judgment on the merits sufficient to support
the defense of res judicata or collateral estoppel regardless of whether
the order states dismissal is “with prejudice.”

B.

Limitations

(1)  Date the Suit Was Filed

Crook also alleged limitations barred Receiver’s claims.  As she did in her response  to the motion for summary judgment, Receiver
sets July 9, 1996 (the date Hartwell filed her petition) rather than October,
7, 1998 (the date Receiver intervened) as the relevant filing date for
limitations.  The first issue we
therefore must address is which filing controls for purposes of limitations.

The Civil Practice and Remedies Code provides:

If a filed pleading relates to a cause of action,
cross action, counterclaim, or defense that is not subject to a plea of
limitation when the pleading is filed, a subsequent amendment or supplement to
the pleading that changes the facts or grounds of liability or defense is not
subject to a plea of limitation unless the amendment or supplement is wholly
based on a new, distinct, or different transaction or occurrence.

 

Tex. Civ. Prac. & Rem. Code Ann. ' 16.068 (Vernon 1997).

In Foust v. Estate of Walters, the San Antonio Court
of Appeals, in the context of analyzing misnomer, explained, “If the nature of
the suit against the defendants remains unchanged, the substitution of parties‑plaintiff
does not constitute a new suit.”  21
S.W.3d 495, 501 (Tex. App.CSan Antonio 2000, pet. denied).  Receiver=s cause of action is identical to,
and was substituted for, Hartwell=s cause of action against Crook.[6]  We conclude the date of Hartwell’s suit
controls for purposes of limitations.

A defendant moving for summary judgment on the affirmative
defense of limitations has the burden to establish that defense
conclusively.  KPMG Peat Marwick v.
Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  Thus, the defendant must (1) conclusively
prove when the cause of action accrued, and (2) negate the discovery rule, if
it applies and has been pleaded or otherwise raised, by proving as a matter of
law there is no genuine issue of material fact about when the plaintiff
discovered, or in the exercise of reasonable diligence should have discovered,
the nature of its injury.  Id.  If the movant establishes that the statute of
limitations bars the action, the non‑movant must then adduce summary
judgment proof raising a fact issue in avoidance of the statute of
limitations.  Id.

Receiver sued Crook under section 24.005(a)(1), and
alternatively section 24.005(a)(2)(B), of the Uniform Fraudulent Transfer Act (“UFTA”).[7]  Before September 1, 1993, the limitations section
of the Act provided:

(a) A cause of action with respect to a fraudulent
transfer or obligation under this chapter is extinguished unless action is
brought:








(1) under Section 24.005(a)(1) of this code, within
four years after the transfer was made or the obligation was incurred or, if
later, within one year after the transfer or obligation was or could reasonably
have been discovered by the claimant.

(2) under Section 24.005(a)(2) or 24.006(a) of this
code, within four years after the transfer was made or the obligation was
incurred.

 

Act of June 1, 1987, 70th Leg., R.S., ch. 1004, ' 1, sec. 24.010(a)(1), (2), 1987 Tex.
Gen. Laws 3388, 3393 (amended 1993) (current version at Tex. Bus. & Com. Code Ann. ' 24.010(a)(1), (2) (Vernon Supp.
2002)).

Thus, in subsection (a)(1) of the UFTA limitations provision,
the legislature specifically set forth a “discovery rule” for causes of action
based on transfers made with “actual intent to hinder, delay, or defraud any
creditor of the debtor.”  See Act
of June 1, 1987, 70th Leg., R.S., ch. 1004, ' 1, sec. 24.005(a)(1), 1987 Tex. Gen.
Laws 3388, 3390 (amended 1993) (current version at Tex. Bus. & Com. Code Ann. ' 24.005(a)(1) (Vernon Supp.
2002)).  Furthermore, it distinguished
such causes of action from those based on transfers for which reasonably
equivalent value was not received in exchange for the transfer. See Act
of June 1, 1987, 70th Leg., R.S., ch. 1004, ' 1, sec. 24.005(a)(2), .006(a) 1987
Tex. Gen. Laws 3388, 3390B91 (amended 1993) (current version at Tex. Bus. & Com. Code Ann. ' 24.005(a)(1), 006(a) (Vernon Supp.
2002)).  For the latter type of
transfers, the legislature provided no discovery rule.  In short, the UFTA specifically acknowledges
the availability of the discovery rule to cases of transfers made with actual
intent to defraud.

In addition, under the UFTA, a transfer was considered made 

(A) with respect to an asset that is real property
other than a fixture, but including the interest of a seller or purchaser under
a contract for the sale of the asset, when the transfer is so far perfected
that a good faith purchaser of the asset from the debtor against whom
applicable law permits the transfer to be perfected cannot acquire an interest
in the asset that is superior to the interest of the transferee; and








(B) with respect to an asset that is not real property
or that is a fixture, when the transfer is so far perfected that a creditor on
a simple contract cannot acquire a judicial lien otherwise than under this
chapter that is superior to the interest of the transferee.

 

Act of June 1, 1987, 70th Leg., R.S., ch. 1004, ' 1, sec. 24.007(1), 1987 Tex. Gen.
Laws 3388, 3391 (amended 1993) (current version at Tex. Bus. & Com. Code Ann. ' 24.007(1) (Vernon Supp. 2002)).  Finally:

(3) if applicable law does not permit the transfer to
be perfected as provided [in the subsections quoted above], the transfer is
made when it becomes effective between the debtor and the transferee;

(4) a transfer is not made until the debtor has
acquired rights in the asset transferred; and

(5) an obligation is incurred:

   (A) if oral,
when it becomes effective between the parties; or

   (B) if
evidenced by a writing, when the writing executed by the obligor is               delivered to or for the benefit
of the obligee.

Act of June 1, 1987, 70th Leg., R.S., ch. 1004, ' 1, sec. 24.007(2)B(5), 1987 Tex. Gen. Laws 3388, 3391
(amended 1993) (current version at Tex.
Bus. & Com. Code Ann. ' 24.007(2)B (5) (Vernon Supp. 2002)).

With the foregoing provisions of the Uniform Fraudulent
Transfer Act in mind, we turn to the three transfers made by Swate to Crook and
now challenged by Receiver.

(3)  The Three Alleged Transfers


The House.  Crook=s only summary judgment proof on
transfer of the house was a certified copy of the warranty deed by which Swate
conveyed the property to Crook.  The deed
was dated April 2, 1990, over six years before Hartwell filed her
petition.  As set forth above, however,
UFTA section 24.010(a)(1) specifically allows a cause of action to be brought Awithin one year after the transfer or
obligation was or could reasonably have been discovered by the claimant.@ 
Act of June 1, 1987, 70th Leg., R.S., ch. 1004, ' 1, sec. 24.010(a)(1), 1987 Tex. Gen.
Laws 3388, 3393 (amended 1993) (current version at Tex. Bus. & Com. Code Ann. ' 24.010(a)(1) (Vernon Supp. 2002)).








Receiver pleaded the discovery rule in an amended petition
filed before the motion for summary judgment. 
Hartwell pleaded it in her original petition.  Crook therefore had to prove as a matter of
law there was no genuine issue of material fact about when Receiver discovered,
or in the exercise of reasonable diligence should have discovered, the
allegedly fraudulent transfer.  See
KPMG Peat Marwick, 988 S.W.2d at 748. 
At oral argument, Crook suggested the registered warranty deed sufficed
to negate the discovery rule. 
Registration of a fraudulent conveyance at a certain date, however, is
merely one circumstance bearing on the creditor=s actual or presumed knowledge.  Eckert v. Wendel, 40 S.W.2d 796, 797
(Tex. 1931).  “[T]he intent to hinder,
delay, and defraud which makes a gift or conveyance void as to creditors is
rarely or never declared on the face of the deed.”  Id. at 801.

Swate transferred the house to Crook in 1990, over two years
after Hartwell instituted a lawsuit against Swate to recover overdue child
support and alimony.  At the time of the
transfer, Crook was still married to Swate, and the warranty deed states only the
conveyance was “for a good and valuable consideration.”  Because the warranty deed did not
conclusively establish when Receiver knew or should have known about the
allegedly fraudulent transfer of the house, Crook’s summary judgment proof did
not conclusively establish limitations had run on Receiver’s challenge to that
transfer.








In her motion for rehearing, Crook argues (1) this court’s
reliance on Eckert is misplaced and (2) the decision in this case
conflicts with Quarles v. Hardin, 249 S.W. 459 (Tex. 1923).  We disagree. 
Like the present case, Eckert was a limitations case; Quarles
was not.  In Eckert, as in the
present case, the allegedly fraudulent transfer was made when the transferor
was under an obligation, not yet reduced to judgment, to the person
subsequently seeking to recover the obligation. 
See Eckert v. Wendel, 57 S.W.2d 865, 865B66 (Tex. Civ. App.CSan Antonio 1933, no writ) (setting
forth chronology of case).  In Quarles,
the obligation arose after the allegedly fraudulent transfer.  See 249 S.W. at 460 (stating Quarles
owed nobody anything at the time of the deed). 
In Eckert, the court was considering when the
fraudulent transfer might reasonably have been discovered; in Quarles,
it was considering whether subsequent creditors should be held to
have knowledge of the transfer they alleged to be fraudulent and whether
recording of the deed rendered impossible any perpetration of fraud by virtue
of it.  See Eckert v. Wendel, 40
S.W.2d 796, 797 (Tex. 1931); Quarles, 249 S.W. at 462.  Eckert, not Quarles, applies in
the present case.

The ring.  In support of her
argument limitations had expired on the transfer of the ring, Crook points only
to an unverified petition in intervention served by Swate’s mother, Willie Gray
Watts, on February 7, 1992.  Watts
alleged in part:

1.  Intervenor
has an interest in the matter in controversy in that Petitioner, [Crook], is in
possession of a diamond ring of Intervenor=s of an
approximate value of $52,000.00.  The
diamond ring was purchased by Intervenor by funds held in trust.

2.  This diamond
ring is believed to be in the possession of Petitioner, [Crook], and Intervenor
seeks the return of the diamond ring prior to the court=s determination of the division of the parties marital
property.

3.  Intervenor
alleges that the diamond ring was placed in Respondent=s TOMMY ERNEST SWATE, possession for safe keeping but
has since been claimed by Petitioner, [Crook], as community property of the
parties.

 

We question whether this pleading constitutes competent summary judgment
proof.  Cf. Laidlaw Waste Sys.
(Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex. 1995)
(referring to pleadings in case then before court and stating, generally
pleadings are not competent evidence even if sworn or verified).  Regardless, the March 26, 1992 Crook-Swate divorce
judgment is also part of the summary judgment proof.  The typewritten portion of that divorce
judgment awarding to Crook all “personal effects in the possession of or
subject to the sole control” of Crook initially excluded the ring from that
category of property awarded to her, but this exclusion was later lined
out.  Thus, the summary judgment proof
establishes a transfer of the ring to Crook occurred at least by March 26,
1992.








Like the registration of the warranty deed, the judgment of
divorce is merely one circumstance bearing on Receiver’s actual or presumed
knowledge.  Cf. Eckert, 40 S.W.2d  at 797. 
The Crook-Swate judgment of divorce did not conclusively establish when
Receiver knew or should have known about the allegedly fraudulent transfer of
the ring.  Crook’s summary judgment proof
did not conclusively establish limitations had run on transfer of the ring.

The cash.  The transfers of cash
at issue occurred from May to July 1993. 
Crook implicitly concedes, if the date of Hartwell’s suit controls,
limitations does not bar the action. Because the date of Hartwell’s suit
controls, Receiver=s challenge to the transfers of cash to Crook is not time
barred.

The trial court erred in granting Crook’s motion for summary
judgment.  We sustain Receiver’s point of
error one.

II.

Point of error two: Did the trial court err in denying
Receiver’s

motion for summary judgment?

 

In point of error two, Receiver argues the trial court erred
in denying her motion for summary judgment. 
As plaintiff, Receiver was entitled to summary judgment only if she
conclusively proved all essential elements of her claim.  See MMP, Ltd., 710 S.W.2d at 60; Geiselman,
965 S.W.2d at 535.








Receiver sued Crook under Texas Business and Commerce Code
section 24.005(a)(1), and alternatively under section 24.005(a)(2)(B).[8]  Under subsection (a)(1), Receiver was
required to prove Swate’s Aactual intent to hinder, delay, or defraud any creditor of
the debtor.@ 
Act of June 1, 1987, 70th Leg., R.S., ch. 1004, ' 1, sec. 24.005(a)(1), 1987 Tex. Gen.
Laws 3388, 3390 (amended 1993) (current version at Tex. Bus. & Com. Code Ann. ' 24.005(a)(1) (Vernon Supp. 2002)).  Under subsection (a)(2)(B), Receiver was
required to prove Swate did not receive a reasonably equivalent value for the
transfer and he Aintended to incur, or believed [he] would incur, debts beyond
[his] ability to pay as they became due.@ 
Act of June 1, 1987, 70th Leg., R.S., ch. 1004, ' 1, sec. 24.005(a)(2)(B), 1987 Tex.
Gen. Laws 3388, 3390 (amended 1993) (current version at Tex. Bus. & Com. Code Ann. ' 24.005(a)(2)(B) (Vernon Supp.
2002)).

The question whether a conveyance is made with the intent to
delay, hinder, or defraud creditors is ordinarily a question of fact for the
jury, unless the fraud is admitted, the fraudulent intent appears on the face
of the instrument of conveyance, or there is some interest reserved in the
property inconsistent with the alleged conveyance.  Letsos v. HSH Inc., 592 S.W.2d 665,
670 (Tex. Civ. App.CWaco 1979, writ ref=d n.r.e.).  If fraudulent intent is only to be deduced
from facts and circumstances the law considers as mere Abadges of fraud@ and not fraud per se, these
matters must be submitted to the trier of fact, who then draws the inference as
to the fairness or fraudulent character of the transaction.  Quinn v. Dupree, 303 S.W.2d 769, 774
(Tex. 1957); Coleman Cattle Co. v. Carpentier, 10 S.W.3d 430, 434 (Tex.
App.CBeaumont 2000, no pet.).

Receiver=s summary judgment proof consisted of the following:  (1) Receiver=s affidavit attesting to the truth of
the facts alleged in the motion and the authenticity of the attached documents;
(2) the March 15, 1993 agreed order for the clerk of the 312th District Court
to pay Crook from funds in the court=s registry; (3) the September 10,
1993 contempt order; (4) the May 10, 1996 supreme court opinion granting habeas
corpus relief; and (5) a June 21, 1996 memorandum by the presiding trial
judge.  Receiver did not cite the
district court to any portions of the documents establishing Swate=s actual intent to hinder, delay, or
defraud, or establishing Swate did not receive equivalent value for the
transfers.  Nor does Receiver cite this
court to any such evidence.

Instead, Receiver invokes the doctrine of collateral estoppel
and argues the necessary issues were resolved in her favor in the contempt
proceedings.  That Swate may have caused
funds to be transferred in violation of a court order does not conclusively
establish intent to defraud or the value of any consideration given in return.








The trial court correctly denied Receiver=s motion for summary judgment against
Crook.  We overrule Receiver=s point of error two.

CONCLUSION

We reverse the summary judgment ordering the Receiver take
nothing by her cause against Judy Cox Swate Crook, and remand Receiver=s claims against Crook for further 




proceedings consistent with this opinion. 
The remainder of the final judgment of February 13, 2001 is
unaffected by this opinion.

 

/s/        John S. Anderson

Justice

 

 

 

Judgment rendered
and Opinion filed July 25, 2002.

Panel consists of
Chief Justice Brister and Justices Anderson and Frost.

Publish C Tex.
R. App. P. 47.3(b).








APPENDIX

THE
HISTORY OF THE CASE

 

Date                Court Event

 

10-7-81          309                 Court renders divorce decree in
the marriage of Tommy E. Swate and Dian Frances Hartwell.

 

3-2-88            309                             Hartwell sues Tommy Swate for non-payment of child
support and alimony. 

 

4-2-90                                                Tommy Swate conveys Briar Hollow
house to Judy Swate [Crook], his then wife. 
Deed is recorded in Harris County June 1, 1990.

 

2-18-92          309                 Court renders a post-divorce
final judgment against Tommy E. Swate and in favor of Dian Frances Hartwell for
$572,284.14 plus interest.

 

3-26-92          312                 Court renders final decree of
divorce in the marriage of Judy Swate [Crook] and Swate.[9]

 

7-24-92          309                 Court appoints John Eikenburg
receiver to take possession of Swate’s non-exempt property to satisfy the final
judgment in favor of Hartwell and orders Swate to turnover such property to Eikenburg.

 

11-6-92          312                 Court dismisses with prejudice
a plea in intervention filed by Hartwell.

 

11-30-92        312                 Eikenburg files a plea in
intervention, alleging he has reason to believe (1) Crook and Swate are in
possession of non-exempt property that was the subject of the 7-24-92 turnover
order and (2) “funds and property have been transferred to third parties in
attempt to conceal the true extent of the nonexempt assets.@

 








3-15-93          312                 Court renders an Aagreed order on motion to withdraw funds to pay debts”
ordering the clerk to issue a check to Crook from amounts in her trust account
or in the registry.

 

5-10-93          309                 Court orders Crook to turn over
to Eikenburg funds from the registry of the 312th District Court on Crook=s receipt of those funds.

 

9-10-93          309                 Court holds Crook in contempt
for not complying with its 5-10-93 order.

 

1-20-94          309                 Court issues an order of
commitment.

 

5-10-96                                  Texas
Supreme Court grants Crook habeas corpus relief, holding the commitment order
void because the order enhanced punishment without giving Crook notice or an
opportunity to be heard and thus deprived Crook of due process.  Ex parte Swate, 922 S.W.2d 122, 125
(Tex. 1996).

 

7-9-96            309                             Hartwell sues Swate, Crook, and Adrianna Marquez (Swate=s common law wife), in part alleging the following
three transfers from Swate to Crook in violation of Texas Business and Commerce
Code:

$ real property at 10 Briar Hollow Lane, No. 42;

$ a diamond ring, and

$ $105,000, of which $49,000 was transferred by the
3-    15-93 order.

Hartwell pleads the discovery
rule.

 

12-9-97          309                 Cheryle R. Johnston succeeds
Eikenburg as receiver.

 

10-7-98          309                 Johnston files a plea in
intervention in Hartwell’s suit against Swate, Crook, and Marquez, alleging the
court “has jurisdiction over Johnston’s claims in that they arise from the same
facts and circumstances as set out in Plaintiff’s Petition to Set Aside
Conveyances on file in this action.”

 

1-24-00          309                 Johnston files a second amended
petition to set aside conveyances, including allegations against Crook
identical to those in Hartwell=s 7-9-96 petition, and again pleading the discovery
rule.

 








1-24-00          309                 Johnston files a traditional
motion for partial summary judgment.

 

3-22-00          309                 Crook files an amended original
answer, asserting a general denial and the affirmative defenses of waiver,
estoppel, limitations, laches, and res judicata, and alleging the cause
of action constitutes an impermissible collateral attack on Crook’s divorce.

 

8-2-00            309                             Court denies Johnston=s motion
for partial summary judgment.

 

10-6-00          309                 Crook files a motion for
summary judgment, alleging Johnston’s claims are barred by estoppel, res
judicata, the doctrine of collateral attack on existing judgments, and
limitations.  She alleges the house was
transferred on April 2, 1990; the ring, by February 7, 1992; and the cash, by
July, 1993.  She does not address the
issue of discovery in relation to any of the alleged transfers.

 

10-19-00        309                 Johnston responds, in part
alleging the motion, filed three days before the case was set for trial, was
not timely filed and contained numerous factual inaccuracies.

 

11-3-00          309                 Court grants Crook’s summary
judgment motion.

 











[1]  Crook’s name
changed during the course of the proceedings. 
For consistency, we refer to her as Crook although a different name
appears on some of the trial court documents.





[2]  The procedural
background is set forth in detail in the supreme court opinion and in the
appendix to this opinion.





[3]  See
Tex. Bus. & Com. Code Ann. ''
24.001B.013 (Vernon
1987 and Supp. 2002).  Hartwell also sued Swate and Swate’s
common-law wife.  Those claims were tried
before a jury.





[4]  The
interlocutory order became final on February 13, 2001, when the trial court
rendered judgment on the verdict on the remaining claims after a jury trial.





[5]  However,
according to the supreme court=s recitation of the facts, “Eikenburg sought to
intervene in the divorce action in the 312th, but that court dismissed the
intervention with prejudice, presumably because it had already rendered final
judgment and all that remained was disbursement of the funds in the court's
registry to [Crook].”  Ex parte Swate,
922 S.W.2d 122, 123 (Tex. 1996).  At oral
argument in the present case, Receiver disputed the truth of that statement.





[6]  Crook argues
Receiver cannot claim in Hartwell=s place
because Hartwell=s petition in the 312th District Court was dismissed
and, if Receiver stands in Hartwell=s shoes,
res judicata applies to Receiver=s
claim.  As we discussed above, the
summary judgment proof does not establish res judicata.





[7]  Both Hartwell
and Receiver cited “Tex. Bus. & Com.
Code Ann. ' 24.005(1).” 
Presumably, the intended citation was “Tex.
Bus. & Com. Code Ann. '
24.005(a)(1).  Section 24.005(a)(1)
provided:

 

(a) A transfer made or obligation incurred by a debtor
is fraudulent as to a creditor, whether the creditor’s claim arose within a
reasonable time before or after the transfer was made or the obligation was
incurred, if the debtor made the transfer or incurred the obligation:

 

            (1) with actual intent to hinder, delay, or defraud any
creditor of the debtor.

 

Act
of June 1, 1987, 70th Leg., R.S., ch. 1004, ' 1, sec.
24.005(a)(1), 1987 Tex. Gen. Laws 3388, 3390 (amended 1993) (current version at
Tex. Bus. & Com. Code Ann. ' 24.005(a)(1) (Vernon Supp. 2002)).

 

Hartwell and Receiver also alleged in the
alternative, Ain violation of Tex. Bus. & Com. Code Ann. '24.002, et seq. these transfers were not made
for fair consideration, and at the time of the transfers . . . S[wate] did not
have enough property in Texas, exclusive of the property transferred, subject
to execution to fully satisfy H[artwell=s]
judgment.@  Presumably,
this was an attempt to track the language of then section 24.005(a)(2)(B),
which referred to transfers without receipt of equivalent value when the debtor
intended to incur or believed he would incur debts beyond his ability to
pay.  See Act of June 1, 1987,
70th Leg., R.S., ch. 1004, ' 1, sec. 24.005(a)(2)(B), 1987 Tex. Gen. Laws 3388,
3390 (amended 1993) (current version at Tex.
Bus. & Com. Code Ann. '
24.005(a)(2)(B) (Vernon Supp. 2002)).





[8]  See supra note
7.





[9]  Crook’s name
changed during the course of the proceedings. 
For consistency, we refer to her as Crook even though a different name
appears on some of the trial court documents.